Charles DUNCAN *v.* The Honorable Walter G. WRIGHT

CR 94-260                                              883 S.W.2d 834

Supreme Court of Arkansas
Opinion delivered October 3, 1994

*Daniel D. Becker*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Petitioner Charles Duncan has filed a petition for writ of prohibition to halt his trial on charges of violating Arkansas's Hot Check Law. He contends that the State has run afoul of our speedy trial rules by bringing him to trial more than 12 months after the criminal information was filed against him. We agree that the State failed to meet its burden of proof that it exercised due diligence in arresting Duncan, and we grant the writ.

On November 26, 1991, Duncan wrote three personalized checks with the name Charles Duncan and a Little Rock address (4616 W. 16th, Little Rock, AR 72204) to businesses in Garland County. The checks totaled $288.92 and were drawn on Superior Federal Bank in North Little Rock. All three checks were returned due to insufficient funds.

On January 31, 1992, an information was filed against "Charles Duncan" in Garland County. The information showed Duncan's address in Little Rock as the same address on the three checks in question. A Bench Warrant for Duncan's arrest was signed by the Garland County Circuit Judge on January 31, 1992, and received by the Garland County Sheriff's Office. The address written in hand on the filed Warrant was 4616 W. 16th, Little Rock. That warrant was not served until January 12, 1994, and was served on Robin Landrum, AKA Charles Duncan at 1874

Gaines, Little Rock, according to the Arkansas Arrest/Disposition Report from the Arkansas Crime Information Center.

On February 14, 1994, Duncan moved to dismiss the hot check charges for lack of speedy trial. The State responded that Duncan had evaded capture "by absenting himself from the area and/or by using alias names." Several hearings followed. Duncan admitted that his true name was Robin Landrum. At a later hearing, the prosecutor advised the trial court:

> Your Honor, for the record, the Sheriff's Office, once they get these Violation of Hot Check warrants, they try to serve them one time and we don't return them and there is no further attempt.
>
> . . . .
>
> Judge, the only defense the State would have is the fact that he does have an alias, but I have no proof to show the Court that any attempt was made to locate him.

Defense counsel then advised the trial court that both names, Charles Duncan and Robin Landrum, were in the National Crime Information Center computer. Later, the court was informed by Defendant's Exhibit 1 that according to the NCIC, Robin Landrum used eight aliases including the name, Charles Duncan. The trial court denied the speedy trial motion due to Duncan's alias usage and noted that Duncan had other warrants outstanding in Jacksonville (Pulaski County) and Jefferson County. The petition for writ of prohibition was then filed.

The sole issue before this court is whether the period of delay between date of information and date of arrest is excludable for good cause under Ark. R. Crim. P. 28.3(h). Our Speedy Trial Rules are clear that an accused must be brought to trial within 12 months from the date the charge is filed or date of arrest, if the arrest date precedes the filing of the charge. Ark. R. Crim. P. 28.2. Duncan clearly presented a *prima facie* case of a speedy trial violation, and the burden, therefore, shifted to the State to explain the delay. *Meine* v. *State*, 309 Ark. 124, 827 S.W.2d 151 (1992); *McConaughy* v. *State*, 301 Ark. 446, 784 S.W.2d 768 (1990). The State's response before the trial court was that Duncan's change of address and use of an alias name pre-

vented a more expeditious arrest. Duncan counters that the State was required to use due diligence to find Duncan and arrest him, and this it failed to do.

Whether the State exercised due diligence in these circumstances is the core issue in this case. It is undisputed that Charles Duncan was an alias name for Robin Landrum. It is also undisputed that a Bench Warrant issued for his arrest and that the Little Rock address at 4616 W. 16th taken from the hot checks was written on the filed copy of that warrant. What is less clear is whether any law enforcement agency actually attempted to serve Duncan. The prosecuting attorney advised the court that it was the policy of the Garland County Sheriff's Department to attempt one service but that he had no proof that that was done in this case.

Duncan cites us to the case of *Chandler* v. *State*, 284 Ark. 560, 683 S.W.2d 928 (1985), in support of his petition. In *Chandler*, the accused was arrested for murder on August 14, 1981, and gave the arresting officers her address in Little Rock. Three days later her mother posted a cash bond for her, and she moved in with her mother in Stuttgart. The accused, Chandler, had told the police officers that she was moving back to Stuttgart, and the bond release form clearly showed her address as her mother's address in Stuttgart. Notice of plea and arraignment was sent to the Little Rock address, and she failed to appear. An alias warrant was issued but not served until March 1984. Chandler sought prohibition on speedy trial grounds. We granted the writ of prohibition and held that the State had not made a diligent, good faith effort to bring the accused to trial. In particular, we noted the State's failure to check available court records in an effort to locate Chandler.

The State directs our attention to a case decided by the Arkansas Court of Appeals where speedy trial relief was denied. *See Keys* v. *State*, 23 Ark. App. 219, 745 S.W.2d 628 (1988). In *Keys*, felony informations were filed against the accused in Faulkner County on March 21, 1984, and he was not arrested until October 1986. He was tried in March 1987 and convicted of sexual abuse. The accused, following the filing of the charges in Faulkner County, had gone to the State Hospital in Benton and to the Veteran's Administration Hospital in North Little Rock

for treatment of alcohol abuse. Following that, he had spent time in a halfway house, undergone eye surgery in Little Rock, and lived at the Union Rescue Mission, also in Little Rock. In August 1985, he began a weekly radio show in Little Rock using his own name. He then moved to Benton as the superintendent of the New Pathway Mission. The Court of Appeals declined to reverse the judgment of conviction for lack of a speedy trial. The court noted that standard procedures had been followed by the police officers in attempting to locate Keys, though the court observed that it was unclear whether Keys's name was in the NCIC computer network. The court further stated that it would be unreasonable to require law enforcement to monitor radio programs to locate an accused and distinguished *Chandler* v. *State, supra*, because in *Chandler* the delay was solely the fault of the State.

Neither of these two cases is on all fours with the case before us. It is true, as Duncan maintains, that the duty falls on the State to exercise due diligence to arrest an accused and to bring that person to trial. The burden is on the State to prove that it has met this burden. *Meine* v. *State, supra*. Here, the State may ultimately have been encumbered in that effort by the deceit of Duncan, who from the outset of his check-writing spree used a false name, but the State submitted no proof that it even tried to arrest Duncan. And that is the threshold issue. Without proof that the Sheriff's Department did attempt to serve the warrant, there is no basis to argue that the delay was caused by Duncan's subterfuge.

In sum, the State presented no evidence that Duncan was unavailable or absent. *See Tlapek* v. *State*, 305 Ark. 272, 807 S.W.2d 467 (1991). Had the Sheriff's Department presented proof of thwarted service, the State's contention of absence through use of alias names might have been more convincing. But it logically follows that for the alias names to impede service, service must have been attempted. No proof was offered that it was, and the State accordingly failed to meet its burden.

The writ of prohibition is granted.

HAYS, J., dissents.