John Thompson CAULKINS
*v.* Terry CRABTREE, Circuit Judge

CR 94-153                                    894 S.W.2d 138

Supreme Court of Arkansas
Opinion delivered March 6, 1995

*Gocio, Dossey, & Reeves*, by: *Samuel M. Reeves*, for petitioner.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for respondent.

DAVID NEWBERN, Justice. This is an original action seeking a writ of prohibition to preclude a trial John Thompson Caulkins, the petitioner, contends would be in violation of his right to a speedy trial as provided in Ark. R. Crim P. 28.1(c). We grant the writ because the trial did not take place within the prescribed

one year period. The one year period began when Mr. Caulkins waived extradition from Texas on November 7, 1992. He should have been tried no later than November 7, 1993. We disagree with the Trial Court's conclusion that the State demonstrated two periods of time to be excluded from the 421 days between November 7, 1992, and the trial which was scheduled for January 3, 1994.

Mr. Caulkins was charged in Benton County with delivery of a controlled substance in violation of Ark. Code Ann. § 5-64-401 (Repl. 1993). He was arrested in Texas on November 2, 1992, and as noted above, he waived extradition on November 7, 1992. The one year time for the purposes of Rule 28.1(c) began to run on the latter date. *White v. State*, 310 Ark. 200, 833 S.W.2d 771 (1992). The January 3, 1994, trial date exceeded the one year period by 56 days.

If Rule 28.1(c) is violated, there is an absolute bar to further prosecution. *Tlapek v. State*, 305 Ark. 272, 807 S.W.2d 467 (1991). Mr. Caulkins moved to dismiss, contending the January 3, 1994 trial date violated the Rule. The Trial Court denied the motion because he concluded there were two periods of time to be excluded or subtracted from the 421 day period, thus bringing it within the prescribed one year or 365 days.

The first period the Trial Court excluded was time during which the State had declared it would not prosecute the charge. Rule 28.3(f) permits exclusion of "the time between *nolle prosequi* upon motion of the prosecuting attorney for good cause shown, and the time the charge is later filed for the same offense. . . ." Apparently the decision not to proceed against Mr. Caulkins was made June 7, 1993. The docket sheet shows *nolle prosequi* entered July 2, 1993. The charge was refiled on December 9, 1993. If that period is calculated from June 7 to December 9, 1993, the number of excludable days would be 184. If calculated from July 2 to December 9, 1993, the number would be 159. If either of those numbers of days were subtracted from the 421 day total, the trial would fall within 365 days from the extradition waiver and thus not be in violation of the Rule.

The second period the Trial Court excluded consisted of the 66 days between September 10, 1993, the date a second arrest warrant was issued and November 15, 1993, the date Mr. Caulkins

was rearrested in Texas. Rule 28.3(e) permits exclusion of a time when the defendant is absent or unavailable. The Rule provides, in pertinent part, "A defendant shall be considered absent whenever his whereabouts are unknown. A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for the trial cannot be obtained or he resists being returned to the state for trial." The Trial Court stated that even though Mr. Caulkins' employment was known, he had moved to a new residence and had his telephone disconnected, and the utilities at his new address were not billed in his name.

Neither period was excludable.

After his initial arrest and extradition waiver in November, 1992, Mr. Caulkins was transported to Benton County. He was released on bail November 13, 1992. On January 7, 1993, an information was filed in Benton Circuit Court charging Mr. Caulkins with one count of delivery of a controlled substance.

On January 11, 1993, Mr. Caulkins appeared and entered a plea of not guilty. Four omnibus hearings were scheduled, but each was continued on motion of the State.

Officer Brunell of the Rogers Police Department testified that in January, 1993, an informal meeting was held at the FBI office in Fayetteville. In that meeting, the U.S. Attorney, the Chief of the Rogers Police, the Prosecuting Attorney, and others discussed the possibility of certain cases being prosecuted by the U.S. Attorney's Office. At the conclusion of the meeting, it was Officer Brunell's understanding that the charge against Mr. Caulkins would be *nolle prosequi* and that the U.S. Attorney would pursue a grand jury indictment against him.

In April of 1993, Officer Brunell spoke with the Assistant U.S. Attorney and was told that a federal indictment would not be sought against Caulkins "at that time." In August, 1993, Officer Brunell learned from the U.S. Attorney's Office that the Western District of Arkansas was not going to indict Mr. Caulkins on a delivery or distribution charge as those charges would have to originate in Texas. Federal officials in Arkansas could only charge Caulkins with illegal use of a communication facility.

After learning there would be no federal prosecution on a drug delivery charge, the Rogers Police Department and the Ben-

ton County Prosecutor decided to resume prosecution. On September 10, 1993, Officer Brunell obtained another arrest warrant and entered it into the ACIC and NCIC Information Center System. On that same day he requested assistance of the Fugitive Division of the Arlington (Texas) Police Department in apprehending Caulkins. When Texas officials agreed to help, Officer Brunell sent them a copy of the second warrant and the booking report from the previous arrest.

Officer Albritten of the Arlington Police Department was in charge of apprehending Caulkins. He testified he received his assignment September 10 and his initial investigation revealed Mr. Caulkins had moved his residence since the time of his first arrest. There was, however, no way to ascertain his new address because he no longer had a telephone and had moved into an "all bills paid" apartment, thus his whereabouts could not be learned from checking utilities records.

Within a few days of discovering that Mr. Caulkins had changed addresses, on September 18, 1993, Officer Albritten testified he telephoned Mr. Caulkins' last known employer to verify that he was still an employee. Officer Albritten called Mr. Caulkins' place of employment using an assumed name so as not to reveal his police identity and left his pager number. The page was returned some four hours later by a person Officer Albritten assumed to be Mr. Caulkins. Despite having thus learned on September 18 where Mr. Caulkins was during employment hours, Officer Albritten did not attempt an arrest until November 15, 1993, almost two months later, because he had "priority warrants ahead of Mr. Caulkins."

Mr. Caulkins waived extradition a second time on November 18, 1993, and was transported back to Benton County. On November 20, 1993, he was charged with delivery of cocaine and released on bond, but the information was not filed until December 9, 1993, with the trial set for January 3, 1994.

A hearing was held on December 29, 1993, with respect to the motion to dismiss. Testimony indicated that Mr. Caulkins had changed his residence in January 1993 and had lived at his new address since that date. Mr. Caulkins testified that at all times he kept his bondsman and his lawyer informed of his whereabouts, even during the *nolle prosequi* period. He had worked

for the same employer for the past seven years and had worked in the same location for the past three years.

When the defendant presents a prima facie case of a violation of his right to a speedy trial, the burden shifts to the State to show that the delay was legally justified or the result of the conduct of the defendant. *Meine* v. *State*, 309 Ark. 124, 827 S.W.2d 121 (1992). No doubt Mr. Caulkins presented a prima facie case, thus the burden is on the State to demonstrate some excludable period of time to satisfy Rule 28.1(c).

### 1. Unavailability

We have no difficulty concluding that the State has failed to show Mr. Caulkins was absent or unavailable during the 66 days from September 10 to November 15, 1993. Even if the State were not to be considered responsible for Officer Albritten's delay of some 60 plus days in arresting Mr. Caulkins, the actions of the Benton County authorities in seeking Mr. Caulkins' apprehension subsequent to the *nolle prosequi* period cannot be described as diligent.

Officer Brunell admitted on cross-examination he was aware that Mr. Caulkins' mother lived in Rogers and that he had known of his place of employment since the initial arrest in 1992. After the charges were refiled Officer Brunell made no attempt to call Mr. Caulkins' employer or bondsman to ask his whereabouts. He did call Officer Albritten on September 15, 1993, and was told that Mr. Caulkins had changed his address. He testified he called Officer Albritten again on October 29, 1993, and was told that Officer Albritten had learned Mr. Caulkins' place of employment. As noted above, Mr. Caulkins' place of employment was known to Benton County authorities since 1992. There is no evidence that any effort was made to urge that an arrest be effected at Mr. Caulkins' place of employment.

When Mr. Caulkins was first arrested in 1992, Benton County authorities had gone to Texas to assist Texas authorities in apprehending him. When it came time to arrest him again, they seem to have left the matter in the hands of a busy Texas policeman, making telephone calls to him some six weeks apart. Although he was faced with an apparent speedy trial issue, there is no evidence that the Benton County Prosecutor made any effort to gain

the assistance of a court, here or in Texas, or to otherwise assure the arrest was made as soon as possible. There is no indication whatever that Mr. Caulkins was attempting to evade being rearrested. He promptly waived extradition proceedings each time he was arrested.

It is clear that Mr. Caulkins could have been arrested at his place of employment virtually anytime after the charges were refiled. The State has a duty to make a diligent, good faith effort to bring the accused to trial. *Meine* v. *State, supra; Chandler* v. *State,* 284 Ark. 560, 683 S.W.2d 928 (1985). We cannot agree that the State has borne its burden of showing that Mr. Caulkins was absent or unavailable from September 10 until November 15, 1993.

### 2. *Nolle prosequi*

In *Washington* v. *State*, 273 Ark. 82, 617 S.W.2d 3 (1981), we said the State had attempted to use a *nolle prosequi* to bypass other provisions of Rule 28.3 and thus avoid a dismissal for failure to provide a speedy trial. We held that the *nolle prosequi* has no such effect "absent a showing of good cause for the period of delay." With that pronouncement, we published a simultaneous order amending Rule 28.3(f) to install formally the good cause requirement. *See also Beasley* v. *Graves*, 315 Ark. 663, 869 S.W.2d 20 (1994).

The other case in which we dealt with *nolle prosequi* in the speedy trial context is *Carter* v. *State*, 280 Ark. 34, 655 S.W.2d 379 (1983). Ms. Carter was about to be tried for the murder of her husband when her daughter indicated it was she, and not her mother, who committed the crime. The charge was *nolle prosequi*, and the investigation continued. When it was determined that there was insufficient evidence against the daughter, the charge against Ms. Carter was refiled. The Trial Court denied her motion to dismiss, finding good cause for the *nolle prosequi* in light of the possibility that someone other than the defendant was guilty of murder.

Obviously, the *Washington* and *Carter* cases are at opposite ends of a spectrum. Looking to the *Washington* case holding and an *obiter dictum* in the *Beasley* case, we might be tempted to hold that as long as it is not shown that the State is using *nolle*

*prosequi* as a device to avoid a speedy trial dismissal, the time during which the charge was *nolle prosequi* was excludable. That cannot be the law, however, as the burden in this matter is on the State, and we surely cannot say that a defendant's inability to demonstrate an unacceptable motive on the part of the State constitutes, or is equivalent to, a showing of "good cause" by the State. At the other end, the *Carter* case presents a case of practical necessity to delay prosecution when the specter of trying the wrong person for murder appears.

Between these two extreme positions we have no cases defining "good cause" in the context of assessing the State's obligation in connection with Rule 28.3(f) when more than one prospective prosecuting jurisdiction is involved. Looking to cases from other jurisdictions, we find examples such as *State* v. *Pizzuto*, 778 P.2d 42 (Wash. App. 1989). There an issue was whether the State of Washington acted "in good faith and with due diligence" when it waived its right to have a defendant extradited in favor of the right of a sister state where the defendant faced more serious charges. It was held that such a waiver did not violate the good faith and diligence obligation in complying with the Washington speedy trial rule. That decision is not very helpful in this case where the second jurisdiction (federal authorities) had not even charged Mr. Caulkins and ultimately did not do so and there is no showing that there was a need for his presence in a place which would have precluded Arkansas proceedings against him.

An Iowa case, *State* v. *Searcy*, 470 N.W.2d 46 (Iowa App. 1991), took a very flexible approach to the good cause requirement, stating that "a comparatively weak reason for delay may be sufficient to constitute good cause if the delay is relatively short and it does not prejudice the defendant." We find that approach appropriate for administration of a rule like Iowa Rule of Criminal Procedure 27(2)(b) which merely states that a defendant must be brought to trial within 90 days of indictment unless the right to a speedy trial has been waived or there is good cause for the delay. We find it less helpful when dealing with a specific exception such as that found in Ark. R. Crim P. 28.3(f) and our consideration of whether there was good cause for the *nolle prosequi.*

If Benton County officials felt there was some reason not to prosecute due to a pending federal prosecution and learned at a

meeting in January, 1993, of the federal officials' intent to prosecute Mr. Caulkins, we have no idea why the decision not to prosecute in Benton County was put off until June or July 1993 if the intent of the federal officials was the reason for the decision. Nor do we know why that decision was made in June or July after Officer Brunell learned in April that the federal authorities did not intend to proceed "at [that] time."

■ Perhaps more important, the State has presented nothing to show that the contemplation of a federal charge by federal officials made it necessary for the State to drop its charge or even that it might have been somehow ill advised for the State to proceed with its charge against Mr. Caulkins. The Trial Court, when overruling the motion to dismiss, mentioned possible conflicts which might arise between federal and state investigators if charges arising from the same conduct were the subject of two investigations. There was no evidence whatever presented with respect to any such prospective conflicts. Nor was anything presented to suggest either State or federal authorities would in any legal or practical sense have been precluded from trying Mr. Caulkins just because the other might also have him charged and subjected him to trial. In short, we cannot agree there was good cause for the Benton County Prosecutor's decision to decline to prosecute Mr. Caulkins during the 184 or 159 days lost due to that decision.

Writ granted.

Special Chief Justice Diane Mackey joins in this opinion.

GLAZE, J., dissents.

HOLT, C.J., not participating.

TOM GLAZE, Justice, dissenting. I dissent. Whether Mr. Caulkins was unavailable or whether the state made a diligent, good-faith effort to bring him to trial are dependent upon disputed facts. Caulkins testified he had moved, changed addresses, disconnected his phone and never told Arkansas authorities of these changes, even though he made two appearances in court in Arkansas after his move. Caulkins' new residence was one with all utility bills paid. While he made the foregoing move and changes without telling Arkansas authorities, Caulkins claimed Texas authorities still could have determined his new address

since he moved his telephone to his new residence, albeit only for two weeks. He denied telling the Texas officer who finally arrested him that he (Caulkins) "knew this (arrest) was coming."

Texas police officer Jerome Albritten testified he tried unsuccessfully to locate Caulkins, but found he had moved giving no forwarding address. He also could not find Caulkins by checking the utilities. Albritten called Caulkins' place of employment on three occasions and each time Caulkins was "out." Albritten was led to believe Caulkins had a job outside the company. Caulkins, however, had said that he spent all his time at the factory. The officer tried to get the Grand Prairie Police Department to aid in locating and arresting Caulkins at his business, but that department failed to respond. Albritten voiced concern in confronting and arresting Caulkins at work because of a possible conflict. Nonetheless, he ultimately arrested Caulkins at his place of employment after making the other foregoing efforts to find him.

The trial judge listened to the foregoing and other testimony and concluded the state diligently pursued Caulkins' whereabouts, yet the majority court, without seeing or hearing these witnesses, concludes otherwise. From the evidence, the trial court could have reasonably concluded Caulkins had avoided the authorities, or, at the minimum, failed to cooperate with them. At best, this court has substituted its judgment and discretion for that exercised by the trial judge. A writ of prohibition is not appropriate to resolve such facts or to make those inferences which necessarily depend upon the truthfulness and demeanor of the witnesses. *See Ellison v. Langston*, 290 Ark. 238, 718 S.W.2d 446 (1986).

It is important to reiterate, at this juncture, that prohibition is to restrain an inferior tribunal from proceeding on a matter not within its jurisdiction, but it is never granted unless the inferior tribunal has clearly exceeded its authority and the party applying for it has no other protection against the wrong that shall be done by such usurpation. *Fletcher v. State*, 318 Ark. 298, 884 S.W.2d 623 (1994); *Lowery, Administrator v. Steel, Chancellor*, 215 Ark. 240, 219 S.W.2d 932 (1949). Our court has steadfastly adhered to the rule that a writ of prohibition cannot be substituted for the normal remedy by appeal. *Gran v. Hale*, 294 Ark. 563, 745 S.W.2d 129 (1988).

Certainly, Caulkins could raise his speedy trial issue on

appeal. In the present case, disputed facts existed and the trial court, having jurisdiction to do so, resolved those disputed matters in the state's favor. The majority now wrongly substitutes its own findings and will in this case by entering an extraordinary writ which is improper in those circumstances. This court should deny issuing such a special writ.

As a secondary matter, the majority opinion concludes that the state's reason to nolle prosequi Caulkins was not good cause for delaying pursuit of its case against Caulkins. The trial court pointed out that, when a multi-agency investigation is involved and one agency desires to take the lead, the investigation is difficult to coordinate. Arkansas Officer John Brunell explained that he understood Caulkins' case would have to be nolle prosequi in order for the United States Attorney's office to seek a grand jury indictment on drug charges. About five months later, the United States Attorney's Office concluded it could not seek an indictment for drug violations against Caulkins but only for the illegal use of a communication facility. Obtaining this information, the state promptly recommenced its case against Caulkins.

Although the majority court seems to have no understanding of the problems attendant to having federal, state and local authorities simultaneously involved in pursuing similar charges against one suspect, the trial court certainly was aware of such intricacies. Caulkins obviously offered no objection and largely made himself unavailable, or at least noncommunicative to the authorities in Arkansas.

Based on these facts, I find it hard to believe this court rejects the state's obvious good-faith nolle prosequi of charges against Caulkins, while the federal agencies investigated Caulkins to determine if they should bring charges. The trial court is right — the majority is wrong. This is yet another reason why a writ of prohibition should not be granted.