Waymon Derrall HOLBERT *v.*
ARKANSAS COUNTY CIRCUIT COURT;
The Honorable Russell Rogers, Arkansas County Circuit Judge,
Arkansas County, Arkansas

CR 99-886                                       5 S.W.3d 474

Supreme Court of Arkansas
Opinion delivered December 16, 1999

*Boyd & Buie,* by; *Christina Boyd,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Brad Newman,* Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Petitioner Waymon Derrall Holbert requests us to issue a writ of prohibition. He alleges his case should be dismissed because the State has violated his right to a speedy trial. We have jurisdiction of this matter under Ark. Sup. Ct. R. 1-2(a)(3) (1999) and Ark. R. Crim. P. 28.1(d) (1999).

The events leading to Holbert's rape charges and his arrest commenced in August of 1993 when a five-year-old girl reported to the DeWitt Department of Human Services that Holbert had sexually molested her. On August 31, 1993, DeWitt police officers interviewed Holbert concerning the girl's accusations; he denied them. The police had no immediate contact with Holbert after the August 31 interview, but rape charges were eventually filed against Holbert on March 15, 1994. Holbert was not arrested on the charges until October 6, 1998. After the court set a trial date, Holbert moved to dismiss, asserting that his right to a speedy trial, as provided by Ark. R. Crim. P. 28.1 and 28.2(a), had been violated. He claimed that he should have been brought to trial within twelve months from the date he was charged, and that period ended on March 15, 1995. The State countered, claiming the delay between the filing of charges against Holbert and the obtaining of his arrest was due to his absence and unavailability, and this period of delay should be excluded in computing Holbert's speedy-trial time. *See* Ark. R. Crim. P. 28.3(e) (1999). After taking evidence on this issue, the trial court denied Holbert's dismissal motion.

In arguing that the trial court erred in rejecting his speedy-trial motion, Holbert cites three cases he believes require dismissal of his charges. We find all three cases to be factually distinguishable from Holblert's situation and not controlling here. In each of the three cases relied on by Holbert, this court granted a writ of prohibition based upon the defendants' speedy-trial violation claims. In the

first, *Caulkins v. Crabtree*, 319 Ark. 686, 894 S.W.2d 138 (1995), this court held that the State failed to show Caulkins had been absent or unavailable during a sixty-six-day period, which the State claimed was excludable when computing speedy-trial time. This court recognized the established rule that the State had the duty to make a diligent, good-faith effort to bring the accused to trial, but the court held that the State had failed to meet that burden because the Rogers Police Department's investigating officer knew of Caulkins's place of employment, but made no effort to arrest him at work.

In Holbert's second case, *Duncan v. Wright*, 318 Ark. 153, 883 S.W.2d 834 (1994), Duncan was charged on January 31, 1992, with violating Arkansas's Hot Check Law, but he was not arrested and brought to trial within the twelve-month period required under Arkansas's speedy-trial rule. While the State initially responded that Duncan had absented himself "from the area and/or by using alias names," the prosecutor later advised the trial court that he had no proof to show the State had made any attempt to locate or to arrest Duncan. Because of the State's failure to show it had exercised due diligence to arrest Duncan, this court granted Duncan's petition to dismiss his charges on speedy-trial grounds.

Finally, Holbert refers us to *Chandler v. State*, 284 Ark. 560, 683 S.W.2d 928 (1985), where the defendant Chandler was arrested on August 14, 1981, for murder. She subsequently failed to appear for plea and arraignment which resulted in her arrest in March 1984 — well outside the twelve-month speedy-trial requirement. The proof showed that Chandler had previously informed the police and court personnel that she was returning to Stuttgart. Her bond release form showed her address at 624 North Wood, Stuttgart, and a phone number of 673-4209. The form also identified Chandler's relative, Amelia Scott, who had the same address and telephone number. This court granted Chandler's request for writ of prohibition, holding that the State had a duty to make a diligent, good-faith effort to bring an accused to trial, and the State failed to do so when it did not check the available court records or otherwise demonstrate any diligent attempt to locate the accused.

As is readily discerned by reading the decisions in *Caulkins*, *Duncan*, and *Chandler*, the facts in each case were undisputed, showing the State made *no* attempt to locate the accused in order to bring him or her to trial. That is not the situation here. In the

instant case, the evidence reveals that disputed questions of fact exist as to whether the State made a diligent, good-faith effort to locate Holbert or whether Holbert's absence or unavailability was due to his own conduct.

At the hearing below, Holbert offered evidence questioning whether the State made a good-faith attempt to locate him. He testified that he was aware of the five-year-old girl's accusations against him in August of 1993, but he denied knowing that the State had filed rape charges against him on March 15, 1994. Holbert related that, during the time of his divorce in August 1993, he had gone to Louisiana and stayed with his brother, but claimed he had returned in late 1993 or January 1994 to Altheimer (Jefferson County), where he lived and was employed as a farmer until he was arrested on October 6, 1998. He testified that he assessed his personal property and paid utilities in his name, although he offered no documents to support those claims.

Holbert offered additional testimony from his ex-wife and two daughters who all agreed they had known of Holbert's whereabouts in 1993 and after his return to Arkansas in January 1994. Nonetheless, they said that no officers ever contacted them about where Holbert was. One of Holbert's daughters testified that her husband had been a patrolman for DeWitt and later worked for the Arkansas County Sheriff, but she averred that her husband never asked about her father's whereabouts. Holbert's other daughter stated that the prosecuting attorney represented her in a divorce action, but never mentioned her father. Finally, Holbert called his employer, Joey Adams, as a witness, who said that Holbert had lived on Adams's property and worked for him since January 1994.

The State called four officers as witnesses, who testified concerning their respective efforts to locate Holbert after he was formally charged with rape. DeWitt Police Officer Milton Peebles said that he made efforts to locate Holbert, and, in doing so, almost arrested his brother, thinking he was Holbert. Peebles talked several times with Holbert's relatives, including Holbert's brother-in-law, and learned Holbert had gone to Louisiana.

Wayne Simpson, Sheriff of Arkansas County until 1997, stated that he checked the National Crime Information Computer (NCIC) and the Arkansas Crime Information Computer (ACIC), and confirmed that Holbert's name had been entered in them.

Simpson also ran Holbert's license number through NCIC, but the address given by the computer reflected an address where Holbert did not reside. Simpson also checked with a farmer for whom Holbert had worked, but learned Holbert was no longer employed there; he was told Holbert had gone to Louisiana. The former sheriff further related that he had spoken with Holbert's brother several times and the brother claimed he did not know where Holbert was.

Deputy Sheriff Donnie Stephens testified next, stating that he, too, had spoken with Holbert's brother on several occasions and was told Holbert was "somewhere" in Louisiana. Stephens also confirmed that Holbert's name had been entered in the ACIC.

The State's final witness, Deputy Sheriff Jack Lock, testified that, when he was employed by the Arkansas County Sheriff's Office in 1995, he was told Holbert was at an unknown location in Louisiana. Later in 1995, Lock obtained information suggesting Holbert might be in Jefferson County, so he sent a description of Holbert to the Jefferson County Sheriff's office thinking the Jefferson County officers might find Holbert. Deputy Lock said that he last re-entered Holbert's name on the NCIC and ACIC in March 1998.

It is settled law that we do not grant a writ of prohibition unless it is clearly warranted and only in a case where there are no disputed facts. *Brown v. State*, 330 Ark. 239, 952 S.W.2d 673 (1997); *State .v. Langston*, 290 Ark. 238, 718 S.W.2d 446 (1986). When considering the foregoing testimony given by the State and Holbert, the trial court was not required to believe Holbert's story that he was easily available to the law enforcement officials if they had made a diligent good-faith effort to locate him. *See Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996); *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994). Holbert's claim to this effect is in sharp contrast to the testimony given by several officers who consistently testified that Holbert's relatives had informed them that Holbert was in Louisiana. This factual dispute alone precludes the issuance of a writ of prohibition. Therefore, we deny Holbert's petition without prejudice.

CORBIN, J., concurs.