Larry Darnell BRUNSON  *v.*  STATE of Arkansas

CR06-710                                            245 S.W.3d 132

Supreme Court of Arkansas
Opinion delivered December 14, 2006

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Mike Beebe*, Att'y Gen., by: *LeaAnn J. Irvin*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. This is the second appeal of Appellant Larry Darnell Brunson's first-degree-murder convictions for the shooting deaths of Gloria Brunson and Frankie Shaw. In *Brunson v. State*, 349 Ark. 300, 79 S.W.3d 304 (2002), this court reversed Brunson's conviction and remanded the case to the Circuit Court of Jefferson County. Upon retrial, Brunson was again convicted on two counts of first-degree murder and was sentenced to two consecutive terms of life imprisonment. On appeal

he raises five points of error: (1) that two ex parte orders of protection were admitted into evidence in violation of his Sixth Amendment right to confrontation, (2) that certain testimony admitted into evidence under Ark. R. Evid. 403 and 404(b) was introduced purely for prejudicial effect, (3) that the circuit court erroneously denied his motion for directed verdict, (4) that the State was erroneously allowed to challenge prospective juror Susan Brown for cause, and (5) that the circuit court improperly refused to submit a lesser-included offense instruction to the jury. We find no error and affirm on all points.

## I. Sufficiency of the Evidence

Burton contends that the State presented insufficient evidence to convict him of first-degree murder and therefore the circuit court erred by denying his directed-verdict motion. On appeal, a motion for directed verdict is reviewed as a challenge to the sufficiency of the evidence. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). While the sufficiency-of-the-evidence challenge was not Brunson's first point on appeal, due to double jeopardy concerns, we review this issue before reaching the other issues on appeal. *See Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004).

The test for determining sufficiency of the evidence is whether substantial evidence, either direct or circumstantial, supports the verdict. *Ross v. State, supra.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

Circumstantial evidence may constitute substantial evidence to support a conviction. *Id.* Guilt can be established without direct evidence and evidence of guilt is not less because it is circumstantial. *See id.* The longstanding rule is that for circumstantial evidence to be substantial, it must exclude every other reasonable hypothesis than that of guilt of the accused. *Howard v. State*, 348 Ark. 471, 79 S.W.3d 273 (2002). Stated another way, circumstantial evidence provides a basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Such a determination is a question of fact for the jury to determine. *Id.* We will disturb the jury's

determination only if the evidence did not meet the required standards, leaving the jury to speculation and conjecture in reaching its verdict. *Id.*

It is well settled that the credibility of witnesses is an issue for the jury and not this court. *Ross v. State, supra.* Furthermore, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Howard v. State, supra.* In doing so, the jury may choose to believe the State's account of the facts rather than the defendant's. *Id.*

Brunson points out that the majority of the State's evidence at trial was circumstantial, and argues that the evidence was not sufficient for the jury to reasonably exclude any hypothesis other than his guilt. Specifically, he argues that the testimony of the witnesses at trial establishes that he did not have an opportunity to commit the murders and that he was not at the crime scene that evening. The record, however, does not support Brunson's sufficiency argument.

Brunson and Gloria Brunson were married in 1983 and had four children. The family lived in Pine Bluff, and Gloria worked for the Social Security Administration from 1979 until her death in 1999. According to the couple's children and Gloria's co-workers, the couple's relationship was volatile. In the three years leading up to the murders, Brunson would call Gloria at work and at home numerous times a day and routinely showed up at her work unannounced. Gloria would often arrive at work showing signs of physical abuse. During this turbulent period, Gloria became romantically involved with Frankie Shaw.

In the summer of 1998, the couple separated. Gloria remained in the family home with the children, and Brunson moved into the home of his brother and sister-in-law Alfred and Vivian Brunson. In July 1998, Gloria obtained a temporary protection order against Brunson, which order was extended in December 1998. In November 1998, Gloria filed for divorce. After the divorce was filed, Brunson's behavior toward Gloria became even more aggressive, and despite the protection order, he continued to harass his wife.

In late November 1998, Gloria was promoted and went to Dallas to begin twelve weeks of job training. Employees at the Social Security Administration office in Pine Bluff were instructed not to release any information to Brunson regarding Gloria's

whereabouts. Brunson proceeded to call several administration employees to get the information, alleging that he was in the hospital and needed to reach Gloria. Eventually, Brunson discovered Gloria's whereabouts and traveled to Dallas. At the hotel, Dianne Williams, a co-trainee, witnessed Brunson yelling and beating on Gloria's hotel room door. The next day, Brunson appeared unannounced at the training center and confronted Gloria. Williams and another co-worker, Janet Johnson, testified that Gloria was visibly shaken by the confrontation. After the incident, Gloria supplied the security personnel at the training center with copies of the protection order, and Gloria was escorted to and from the hotel.

During December 1998, Gloria took a three-week break from training and returned home to Pine Bluff. On December 19, Gloria took her children to Little Rock for some shopping, and the police received an anonymous phone call reporting that a woman, meeting Gloria's description and driving a car like Gloria's, was traveling towards Little Rock with drugs in the car. She was stopped and police found crack cocaine under the dash of the car — exactly where the informant had told police it would be. Gloria became hysterical and told the officers that Brunson must have planted the drugs, and the officers let her leave without making an arrest. A couple of days later, the police received another anonymous call giving the exact description and location of Gloria's car and reporting that the car contained drugs and a murder weapon. However, upon stopping and searching the vehicle, officers found nothing. Brunson later admitted to making the second call for harassment purposes.

Brunson also repeatedly violated the protection order by calling the family home and hanging around the house. After his family had the locks changed, Brunson even went so far as to call a locksmith to open the front door. Additionally, witnesses testified at trial that Brunson made strange and threatening statements regarding Gloria during the six months leading up to the murder. Lorraine Graham, Gloria's friend and co-worker, testified that Brunson came to her house one night during the fall of 1998 and told Graham "I go to sleep at night, and I wake up. I look over at her there sleeping. I want to get the gun out of the drawer and just blow her head off." According to the couple's daughter, Latisha Brunson, her father told Latisha that if Gloria was with Shaw, "somebody's going to die, me or him" and "if I'm not with your mom, nobody is going to be with her." Additionally, Brunson

allegedly asked his son, Larry Jr., to smell his mother's panties to see if she was doing anything with other men. Larry Jr. also testified that one afternoon he and his father stopped by Shaw's house, and Brunson took pictures of Gloria's car outside the house.

On April 25, 1999, the day of the murders, Latisha borrowed her father's Ford Explorer to go to Conway with friends. Latisha returned to Pine Bluff around 1:00 p.m and returned the vehicle to Brunson shortly thereafter. At approximately 5:00 p.m., one of Shaw's neighbors, Jennie Green, saw an unidentified black man park a dark-colored Lexus near Shaw's house, walk to Shaw's house, and begin an argument with Gloria and Shaw in the front yard. Green overheard the man say to Gloria that "he would see her dead before he saw her with another man." The man then reached behind him and grabbed an "L-shaped," or gun-shaped, object in the back of his pants. The confrontation ended soon thereafter.

In the early evening, Gloria woke Latisha from a nap and handed her the keys to Brunson's Lexus. At approximately 7:00 p.m., Latisha took her younger brother to the park and returned home around 8 p.m. At about 8:00 p.m., Brunson called Latisha and asked her to fix him a plate of food for dinner. He picked up the plate around 8:15 p.m. and then left. Danny Jenkins, a neighbor of Alfred and Vivian Brunson, reported that Brunson came to his home around 6:00 p.m. and was still there when Jenkins went to bed at 8:00 p.m. However, when Jenkins awoke a couple hours later, Brunson was gone.

Alfred and Vivian Brunson, who had been visiting friends that evening, arrived home at about 8:30 p.m., and Brunson arrived there approximately thirty minutes later. According to Erica Waddell, the girlfriend of Alfred and Vivian's son, Brunson arrived at the home and left shortly thereafter, carrying a brown zippered bag in which he routinely carried his .45 caliber pistol. She testified that Brunson arrived home about an hour later, carrying the brown zippered bag. It was raining that night, and Waddell noticed that Brunson's clothing was soaked as though he had been standing out in the storm. Levester Greene, a friend of Brunson's, testified that Brunson called him around 10:00 or 10:30 p.m. and talked to him for approximately twenty to forty minutes, ending at 11:00 p.m. Alfred testified that he had a conversation with Brunson at approximately 11:30 p.m., but he could not account for Brunson's whereabouts prior to that conversation.

According to two witnesses who lived near Shaw, gun shots were fired in the area of Shaw's residence between 9:30 and 10:30 p.m.

Gloria's and Shaw's bodies were found in Shaw's front yard on the morning of April 26, 1998. Gloria was shot twice. According to the medical examiner, the first shot was fired at close range into Gloria's head, knocking her down, and then, the second shot was fired into her back after she was lying face down on the ground. Shaw was shot three times in the head. The police and medical examiner concluded that Shaw was probably first shot while sitting in his car due to the apparent trajectory of the bullet and the shape of the bullet wound. Shaw was then shot twice while he was lying on the ground outside the car. Both victims had been shot with the same .45 caliber hand gun. The police ruled out the possibility that the victims were shot during a burglary attempt because Shaw had over $200 in his wallet when police found his body, and his house was undisturbed inside.

The police obtained a .45 caliber Auto Ordinance Corporation pistol that belonged to Shaw. After performing tests on the bullets and gun, Berwin Monroe of the Arkansas State Crime Lab determined that the bullets that killed Shaw and Gloria were not fired by Shaw's gun. However, Monroe concluded that the bullets could have been fired from a few gun designs, including a Norinco, Colt, Sig Arms, or U.S. Military pistol. Knowing that Brunson owned a .45 caliber Norinco pistol, Pine Bluff police brought Brunson to the police station for questioning. Brunson alleged that he last saw the gun in his Lexus that was parked at Gloria's house overnight. He further alleged that if the gun was not in the car it must have been stolen. A search of the Lexus did not uncover the gun, which was never found.

Brunson asserts that the jury could not have found him guilty on the evidence recited above without resorting to speculation and conjecture. We disagree. There was an abundance of evidence to link Brunson to the murders.

The State presented ample evidence establishing that Brunson had both the means and the motive to kill the victims. The jury heard from witnesses that Brunson and Gloria had been estranged for almost a year before the murders, and that Brunson's abusive and harassing behavior had caused Gloria to seek an order of protection against Brunson. The evidence also indicated that after Gloria filed for divorce, Brunson was becoming increasingly obsessed with Gloria and resorted to following her around con-

stantly — even following her to Dallas after she tried to hide her whereabouts. Gloria's friends and children testified that Brunson knew about Gloria's relationship with Shaw, knew where Shaw lived, and made threatening remarks indicating that he wanted to kill Gloria and Shaw.

The jury also heard testimony from Jennie Greene, a neutral bystander, who witnessed a fight between Gloria, Shaw, and a man driving the same car as Brunson, on the day of the murders. Greene testified that the man stated he would rather see Gloria dead than with another man and that the man appeared to have a gun. From that testimony alone, the jury could have easily concluded that the man was Brunson — the only person who would be making jealous remarks to his wife and her lover.

Furthermore, Brunson owned a gun that was consistent with the murder weapon, and he was seen the night of the murders carrying the bag in which he kept that gun. Brunson told police that he did not have his gun at the time of the murders and that the gun was stolen. However, we have held that a defendant's improbable explanation of suspicious circumstances may be admissible as proof of guilt. *Howard v. State, supra.* In other words, the jury was entitled to conclude that Brunson was lying to police when he said his gun was missing and that he might have disposed of the gun before talking to police.

Brunson's main contention against the circuit court's ruling is that the time line established by witness testimony proved that he did not have the time or opportunity to commit the murders. However, each of the witnesses who had contact with Brunson that day could only approximate the time of day that he or she had contact with him. Those approximations leave significant gaps in the time line from which the jury could have concluded that Brunson committed the murders. Namely, Brunson was unaccounted for from approximately 9:00 p.m. until 10:30 p.m. — precisely the time when gun shots were heard near the Shaw residence.

Due to the circumstantial evidence establishing Brunson's motive and opportunity to commit the murders, we hold that there was substantial evidence for the jury to find Brunson guilty. Therefore, the circuit court did not err when it denied Brunson's directed-verdict motion.

## II. Sixth Amendment Right to Confrontation

Brunson's second argument is that the circuit court erred in allowing the State to admit the two ex parte orders of protection that were issued against him. He contends that the orders were testimonial in nature, and therefore the court's admission of the orders violated his Sixth Amendment right to confrontation pursuant to the United States Supreme Court's recent opinion in *Crawford v. Washington*, 541 U.S. 36 (2004).

In *Crawford*, the Supreme Court held that a criminal defendant's Sixth Amendment right to confrontation is violated when statements are testimonial in nature and are introduced for a hearsay purpose. *Id.* However, our court has long held that matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court. *Dednam v. State*, 360 Ark. 240, 200 S.W.3d 875 (2005). We will not reverse a circuit court's ruling on a hearsay question absent an abuse of discretion. *Id.*

Brunson made a pretrial motion to exclude both the ex parte orders and the petitions filed by Gloria seeking the orders of protection. The circuit court granted the motion to exclude the petitions because those pleadings contained Gloria's handwritten statements that Brunson physically abused her. As to the ex parte orders, the court allowed the State to introduce the orders, finding that the orders were admitted to show that Gloria obtained protective orders against Brunson, and to show the volatility of Gloria and Brunson's relationship at or near the time of the murders.

At trial the orders were admitted into evidence merely to corroborate the testimony by various witnesses that Gloria had obtained a protective order against Brunson and that Brunson violated that order. The orders contained only a passing pro forma remark concerning Gloria's claims of domestic abuse. Moreover, the State did not need the orders to prove that Brunson abused Gloria because it presented independent testimony from Lorraine Graham that Brunson physically abused Gloria. We conclude that the protective orders were not admitted for a hearsay purpose — that is, to show that Gloria was abused. Rather, the orders were admitted as an operative fact, to show that Gloria had in fact sought and obtained orders of protection, thereby indicating the state of the marital relationship. Thus, *Crawford* is inapposite, and we hold that the circuit court did not abuse its discretion in admitting the orders.

### III. Rule 404(b) Evidence

Brunson next asserts that the circuit court erred in allowing the State to admit certain testimony under Ark. R. Evid. 404(b) because the testimony had no independent relevance and was admitted solely to show his bad character and propensity to commit murder. Brunson also challenges certain testimony on the grounds that the probative value of the testimony is substantially outweighed by its prejudicial effect under Ark. R. Evid. 403.

Circuit courts are afforded wide discretion in making evidentiary rulings, and we will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. *See McCoy v. State*, 354 Ark. 322, 123 S.W.3d 901 (2003). Pursuant to Arkansas Rule of Evidence 404(b) "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b) does, however, allow evidence of other crimes, wrongs or acts to be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of fact." Evidence admitted under 404(b) must be independently relevant, that is it must have a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Williams v. State*, 343 Ark. 591, 36 S.W.3d 324 (2001).

First, Brunson challenges the State's admission of testimony from Gloria's co-workers at the Social Security Administration. He argues that those witnesses testified to incidents that were nothing more than nuisances, and therefore their testimony had no independent relevance. This court has stated that when the purpose of evidence is to show motive, anything and everything that might have influenced the commission of the act may, as a rule, be shown. *Barrett v. State*, 354 Ark. 187, 119 S.W.3d 485 (2003). Additionally, any evidence that is relevant to explain the act, show a motive, or illustrate the accused's state of mind, may be independently relevant and admissible. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000).

Through the testimony of the Social Security Administration witnesses, the State presented various incidents to the jury that exhibited Brunson's obsessive behavior toward Gloria. In so doing, the State established Brunson's state of mind toward Gloria by showing his strange behavior during the months leading up to the murder and the drastic measures that Brunson was willing to

take to keep Gloria under his control. The testimony also established that Brunson was aware of Gloria's relationship with Shaw, and thereby established Brunson's possible motive in committing the murders.

Brunson also challenges Lorraine Graham's testimony that he told Graham he often thought about killing Gloria. Similarly, he challenges Latisha Brunson's testimony that he threatened to kill Shaw if Gloria and Shaw were romantically involved. This court has held that a defendant's previous threats regarding a homicide victim are admissible to show intent and premeditation. *See Starling v. State*, 301 Ark. 603, 786 S.W.2d 114 (1990). Clearly, the testimony that Brunson made statements indicating he had thought about killing the victims combined with a pattern of aggressive behavior toward one of the victims, was independently relevant and admissible to show both Brunson's intent to kill the victims and his premeditation of the crime.

Next, Brunson argues that Latisha's testimony about being scared to live in the family home with Brunson was admitted solely for its prejudicial effect. In support of his argument, Brunson cites our recent case of *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). *Green* was a capital-murder case in which a witness was allowed to testify that she feared for her nephew to associate with the defendant because her nephew and another man had stolen from the defendant and the defendant was linked with the other man's murder. *Id.* Brunson's reliance on the *Green* case is misplaced. Here, the prosecutor asked Latisha if she was scared in order to establish the state of Gloria and Brunson's marital relationship, rather than to link Brunson to another alleged crime. Furthermore, while Latisha had personal knowledge of the conditions in her family's home and, more importantly, how she felt about those conditions, the witness in *Green* resorted to speculation to try to link the defendant to another alleged homicide.

Brunson also challenges the testimony of the Pine Bluff police officers who received and investigated the anonymous phone calls implicating Gloria in criminal activity. Brunson did tentatively admit to making one of the phone calls. Nevertheless, he argues that the State failed to establish the similarity of the calls under the rules governing admission of modus operandi evidence, and therefore the testimony regarding those calls was improperly admitted.

The standard for admission of evidence under Rule 404(b) is different from the admission of evidence under the doctrine of modus operandi, which requires a greater degree of similarity between the crimes. *See Sasser v. State,* 321 Ark. 438, 902 S.W.2d 773 (1995). Admission of extrinsic acts under Rule 404(b) does not need to be as "extensive or striking as is required to show modus operandi." *Id.* at 447, 902 S.W.2d at 778. "The degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial judge, and may vary with the purpose for which the evidence is admitted." *Id.* at 447, 902 S.W.2d at 778.

■ Here, the calls to police were sufficiently similar for the circuit court to conclude that the testimony concerning those calls was admissible under Rule 404(b). According to the officers who took the calls, both calls specifically stated the location of Gloria's car, the contraband that could be found in the car, and the exact location of the contraband in the car. Furthermore, both calls were made by a middle-aged male. Additionally, the calls had independent relevance under Rule 404(b) to show Brunson's state of mind toward Gloria and the state of the relationship between Gloria and Brunson.

Finally, Brunson challenges the State's admission of his son Larry Jr.'s testimony that Brunson asked him to smell Gloria's panties to find out what she was up to. Brunson asserts that Larry Jr.'s testimony was admitted purely for prejudicial purposes and that the testimony was wholly lacking in probative value.

Pursuant to Ark. R. Evid. 403, evidence is not admissible if its probative value is substantially outweighed by the prejudicial effect that the evidence might have on the jury. As with other evidentiary determinations, the balancing of the probative value against prejudicial effect is a matter left to the trial court's sound discretion. *Sasser v. State, supra.*

■ We have no doubt that Larry Jr.'s statement was prejudicial to Brunson, just as the testimony regarding Brunson's thoughts of killing the victims was also prejudicial. However, Larry Jr.'s testimony further established Brunson's increasingly aggressive attitude toward Gloria and his knowledge of Gloria's relationship with Shaw. Moreover, this court has long held that it is proper to allow the State to prove its case as fully as possible. *See Brewer v. State,* 271 Ark. 254, 608 S.W.2d 363 (1980). Thus, we

cannot say that the circuit court abused its discretion when it allowed Larry Jr.'s testimony to be admitted here.

### IV. The State's Challenge of Prospective Juror Brown

For his fourth argument, Brunson argues that the circuit court erred in allowing the State to challenge prospective juror Susan Brown for cause. The decision to excuse a juror for cause rests within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of discretion. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). While rehabilitative questions by counsel and statements that a venire person can be fair can make the person an acceptable juror, they are "not an automatic cureall." *See id.* Further, even if the trial court has abused its discretion, an appellant must show prejudice in order for this court to find reversible error. *Id.*

During voir dire, Ms. Brown professed that she had a mental and emotional opposition to judging another person and to sending another person to the penitentiary. After extensive questioning by both sides, Ms. Brown stated that although she could follow the law, she would have a problem serving on the jury because she would internalize her feelings about judging another person. The trial judge decided to strike Ms. Brown because he was afraid that she might temper her decisions in the case based upon her feelings about judging another.

While counsel did attempt to administer rehabilitative questions, Ms. Brown still repeatedly stated that she would be reluctant to pass judgment on another person, and thereby she indicated that she might be influenced by her own emotional bias when making her decision as to guilt. Thus, in light of our strong deference to the circuit court, we conclude that the circuit court did not abuse its discretion in granting the State's challenge for cause.

### V. Lesser-Included-Offense Jury Instruction

Brunson's final point on appeal is that the circuit court erred in refusing to submit Brunson's proffered instruction on the lesser-included offense of manslaughter to the jury. The circuit court refused to give the instruction, finding that while Brunson's behavior might have been strange and unreasonable compared to that of general society, no evidence had been presented to show he

killed the victims by accident or while under an extreme emotional disturbance. Brunson argues that there was evidence of extreme emotional disturbance because the State presented evidence of Brunson's attempts to control Gloria and to seek revenge on Shaw. The State argues that because Brunson maintained a defense of innocence, he was precluded from receiving a lesser-included offense instruction on manslaughter.

A refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence. *Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001). But, this court will affirm a circuit court's decision to exclude an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Id.* In *Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986), the defendant was charged with possession of a controlled substance with intent to deliver and theft by receiving. *Id.* The defendant asked for a lesser-included offense instruction of possession of a controlled substance, but the trial court denied his proffered instruction because his entire defense was based on his assertion that the State's case was a complete lie and he was innocent. *Id.* This court affirmed, concluding that there was no rational basis for the lower court to give the instruction because the defendant's defense was innocence and because he did not admit that any of the facts alleged by the State were true. *Id.* This court has reached a similar conclusion when the defendant alleged an alibi as his defense. *See Roberts v. State*, 281 Ark. 218, 663 S.W.2d 178 (1984).

Here, the State did in fact present extensive evidence that showed Brunson's controlling behavior prior to the murders and Brunson's desire to seek revenge against Shaw. Yet, Brunson's entire defense was based on his claim of absolute innocence and on his alibi, as in *Doby* and *Roberts*. Here, Brunson put on several witnesses to try to establish a time line that would make it appear impossible for him to be at the crime scene when the murders occurred. He never admitted that he was at the scene of the crime. Nor did he ever admit that he killed the victims by accident or under the influence of extreme emotional disturbance. Thus, we hold that there was no rational basis for the circuit court to give the instruction because no evidence was presented to support Brunson's contention that he committed the lesser-included offense of manslaughter.

## VI. Rule 4-3(h) Review

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions and requests made by either party that were decided adversely to Brunson, and no prejudicial error has been found. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).

Affirmed

DICKEY, J., not participating.