William Ike SEATON, Jr. *v.* STATE of Arkansas

CA CR 07-432                                    272 S.W.3d 854

Court of Appeals of Arkansas
Opinion delivered January 30, 2008

*Jessica Steel Gunter,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Laura Shue,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant William Ike Seaton, Jr., appeals his conviction for the second-degree murder of Gene Woodall, who was shot to death on April 11, 2005, at his rural

residence in Story, Arkansas. Appellant was tried before a jury in Montgomery County Circuit Court. Appellant undeniably shot Woodall, but appellant claimed it was in self-defense. Thus, the trial centered on appellant's intent on the night of the shooting. Appellant argues that the trial court abused its discretion in admitting into evidence two written statements, one from his sister and one given from him. Appellant contends that these two evidentiary rulings were in error and warrant the reversal of his conviction and remand for retrial. We reverse the trial court's ruling on the admission of his sister's written statement, but we affirm the admission of appellant's statement.

To give context to this discussion, we set out the undisputed evidence presented to the jury. On the night in question, appellant drove to his sister's house and had an unpleasant encounter with his sister, Debbie Pope, and his girlfriend, Carolyn Dunn. Then, appellant drove away in his truck along the dirt road. Appellant said he was flagged down by his sister's neighbor, Woodall, as he drove by Woodall's trailer. The two men engaged in a verbal confrontation, both men had shotguns, and at least one shot was fired. Woodall died from a spray of shot, which struck Woodall in the back and shoulder. Woodall succumbed on his front porch. Woodall's twelve-year-old son was inside the trailer and heard the commotion, but he did not witness the shooting. Woodall's son told police he observed what appeared to be a red truck driving away.

The next day, appellant was arrested for public intoxication and ended up in a jail in Morrilton. The officers investigating the murder located appellant in that jail two days after the shooting. After being provided verbal and written *Miranda* warnings, appellant was told that the officers were there to talk about Woodall being shot. Appellant admitted that he shot at Woodall, in response to Woodall shooting at him, but he was surprised to learn that Woodall died. This statement was admitted into evidence over appellant's objection.

Appellant's sister was interviewed twice by a law enforcement officer. Pope gave a more damaging statement the second time, implicating her brother. Though the State issued a subpoena for her, which was attempted to be served in the weeks and days before trial, Pope did not appear when called as a witness during trial. The State proceeded with other witnesses that day, and at the conclusion of that day's presentation, a hearing was conducted to determine the State's efforts to procure Pope's attendance, as

described above. The trial court directed that a warrant issue for contempt against Pope, in the hopes that this would compel Pope's attendance the next day. The sheriff's office attempted to serve Pope twice that night, and once before trial resumed the next morning, but Pope did not appear. The judge found that despite "considerable efforts" and "extreme measures" in trying to procure Pope's attendance, she was unavailable. Her statement was admitted over objections based upon hearsay rules and the Confrontation Clause.

At trial, appellant testified that he was angry with his girlfriend and his sister that day, that they all argued and he left, and that Woodall had flagged him down with a flashlight. Appellant testified that Woodall cursed him and told him not to come back to Pope's house. Appellant said he began to drive away when Woodall shot his truck, whereupon appellant exited his truck with a .20 gauge shotgun, hid behind a tree, and came out to shoot toward Woodall to scare Woodall. Appellant believed he had created an opportunity to leave after he shot, so he re-entered his truck and drove away, throwing away the shotgun while crossing a bridge. Appellant did not think he actually hit Woodall, but expected he would be in trouble for shooting at Woodall, even if it was self-defense. Appellant said he told the officers that he "shot *at* the son of a bitch."

On this evidence, the jury found appellant guilty of second-degree murder. A person commits second-degree murder in either of two ways. The first is when a person, "[k]nowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2006). A person also commits second-degree murder if "[w]ith the purpose of causing serious physical injury to another person, . . . [he] causes the death of any person." Ark. Code Ann. § 5-10-103(a) (Repl. 2006).

A person's intent or state of mind at the time of the offense is seldom apparent. *Harshaw v. State*, 348 Ark. 62, 71 S.W.3d 548 (2002). However, a person is presumed to intend the natural and probable consequences of his actions. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). Intent also can be inferred from the type of weapon used, the manner of use, and the nature, extent, and location of the trauma suffered by the victim. *Harshaw v. State*, *supra*. Here, the State had to prove that appellant acted knowingly or purposefully, as described above.

Appellant first contends that the trial court erred by permitting the State to introduce into evidence the second written statement Pope gave to law enforcement officers. This ruling was first decided on the basis of whether it met with hearsay exceptions outlined in our Rules of Evidence, and then decided on the basis of constitutional rights to confront witnesses. The trial judge rejected all of appellant's arguments to exclude Pope's statement. Pope's statement was very similar to what appellant admitted happened that night, with the exception that Pope said her brother called her that night, both before and after the shooting, initially threatening to kill Woodall, and then later confirming that Woodall was dead.

Appellant's first argument on appeal concerns the hearsay exceptions under Arkansas Rules of Evidence and the constitutional principle of the right to confront witnesses. We move directly to the constitutional argument, because regardless of the ruling regarding admissibility under the Rules of Evidence, appellant's constitutional rights were violated, mandating reversal. Moreover, at the conclusion of the arguments about Pope's statement, defense counsel affirmatively stated to the trial court that "for purposes of the record, my only objection is that I've been denied the right of confrontation."

The Confrontation Clause, found in both the United States and Arkansas Constitutions, is intended to permit a defendant to confront the witnesses against him and to provide him with the opportunity to cross-examine those witnesses. *See Smith v. State,* 340 Ark. 116, 8 S.W.3d 534 (2000); *Huddleston v. State,* 339 Ark. 266, 5 S.W.3d 46 (1999). In *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that out-of-court statements by a witness that are "testimonial" are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness, regardless of whether such statements are deemed reliable by the court, abrogating *Ohio v. Roberts,* 448 U.S. 56 (1980). Testimonial statements cause the declarant to be a witness within the meaning of the Confrontation Clause, because this means one is "bearing witness" against the accused. *Davis v. Washington,* 546 U.S. 1213 (2006). It is the testimonial character of the statement that separates it from other hearsay which, while subject to traditional limitations on hearsay evidence, is not subject to the Confrontation Clause. *Id.*

There can be no dispute that Pope's statement was testimonial in that it was given at the behest of law enforcement officers in their attempt to solve a murder case, and it caused Pope to bear witness against her brother. Thus, the query is distilled to whether Pope was unavailable and whether appellant had a prior opportunity to cross-examine Pope.

The party offering the testimony has the burden of proving the witness unavailable. *Vick v. State*, 314 Ark. 618, 863 S.W.2d 820 (1993); *Register v. State*, 313 Ark. 426, 855 S.W.2d 320 (1993); *Bussard v. State*, 300 Ark. 174, 778 S.W.2d 213 (1989). Also, the party seeking to introduce the prior testimony of an unavailable witness must show that a good-faith effort has been made to procure the attendance of the missing witness. *Vick, supra; Register, supra; Meine v. State*, 309 Ark. 124, 827 S.W.2d 151 (1992). Here, the State made good-faith efforts to procure Pope's attendance, but even if that were not enough, the trial court directed the issuance of a warrant in an unsuccessful effort to compel attendance. Accordingly, Pope was unavailable.

However, appellant did not have a prior opportunity to cross-examine his sister. The State appears to realize this difficulty because it offers alternative reasons to affirm the trial court on this constitutional ruling. First, the State asserts that Pope's statement was offered for a non-hearsay purpose, or alternatively that the admission of Pope's statement was harmless beyond a reasonable doubt. Neither are persuasive, and we are compelled to agree with appellant and reverse on this issue.

■ The State wanted to have Pope's statement admitted because it provided the single most devastating piece of evidence in this trial, which was appellant's state of mind via his words to his sister. In Pope's statement, she recounted that:

> [Appellant] called me and told me about Gene [Woodall] pointing a gun at him. He, Ike said, "I'll kill that son of a bitch." After all the calls he called back and said, "Debbie your buddy is dead."

The State in its own brief asserts, in a different argument section, that it used Pope's statement "to show the events and timing surrounding the shooting, the circumstances of which showed Appellant's motive and state of mind." State's Brief at page 11. The State further avers that

Pope's statement "was more probative on the point than any other that the State could procure through reasonable means. Appellant called Pope and told her what he did; therefore, there was no other witness able to give this testimony." State's Brief at page 9. This statement was offered for the truth of the matter it asserted and cannot be deemed harmless beyond a reasonable doubt. On this point, we must reverse and remand for a new trial. However, because the second point raised on appeal is likely to recur on remand, we address it as follows.

Appellant contends that the trial court erred in denying his motion to suppress the statement appellant gave to police because it was the product of a false promise of help, rendering appellant's statement involuntary. A statement induced by a false promise of reward or leniency is not a voluntary statement. *Williams v. State*, 363 Ark. 395, 214 S.W.3d 829 (2005). When an interrogating law enforcement officer makes a false promise that misleads, and a confession is given because of that false promise, then the confession has not been made voluntarily, knowingly, and intelligently. *Id*. However, for the statement to be involuntary, the promise must have induced or influenced the confession. *Id*.

When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances including the age, experience, education, background, and intelligence of the defendant. *Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005). We defer to the superior position of the trial judge to evaluate the credibility of witnesses who testify at a suppression hearing. *Id*. We will reverse a trial court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id*.

In this case, appellant was interviewed two days after the shooting in the Morrilton jail facility, where he was being held on an unrelated charge. The written statement set forth the undisputed factual scenario outlined above, but affirmatively stated that appellant knew he shot Woodall, but that he only intended to scare Woodall and was unaware Woodall had died.

Sheriff Spivey was in that meeting, along with two other officers. The sheriff had known appellant for twenty years. Appellant was given Miranda warnings, which he signed, waiving those rights. The written waiver included the following:

I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

All three law-enforcement officers testified at the suppression hearing that appellant appeared to be coherent, and that they did not threaten or offer him anything to give the statement. Appellant was in his late fifties at the time, and he had earned his GED.

Right after the form was completed, one of the officers told appellant they were there to talk about the death of Woodall. The sheriff admitted that he probably said to appellant that he should tell the interviewer what happened, "and I'll help you any way I can." Appellant immediately said, "yeah, I shot the son-of-a-bitch." The whole interview took about thirty minutes, during which appellant did not assert any rights or express any remorse. Appellant did not testify at the suppression hearing. After the judge entertained argument of counsel, the judge denied the motion to suppress finding that the statement was not involuntary. We find no error and affirm.

For the statement to be involuntary, the promise must have induced or influenced the confession. *Bisbee v. State*, 341 Ark. 508, 17 S.W.3d 477 (2000), overruled on other grounds in *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In determining whether there has been a misleading promise of reward or leniency, this court views the totality of the circumstances and examines, first, the officer's statement and, second, the vulnerability of the defendant. *Id.* There are articulated factors we look to in our determination of whether the defendant was vulnerable, which include: 1) the age, education, and intelligence of the accused; 2) how long it took to obtain the statement; 3) the defendant's experience, if any, with the criminal-justice system; and 4) the delay between the Miranda warnings and the confession. *Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998).

In this instance, there was no evidence that appellant was vulnerable. Appellant was an adult with a high-school equivalency education. He appeared to be coherent and in fair physical condition. He was being detained for unrelated criminal charges and was interviewed by law enforcement officials, one of whom he had known personally for twenty years. There is no indication that the general statement, "I'll help you any way I can," induced this confession. The whole process took just over thirty minutes.

Considering the totality of the circumstances, and giving due deference to credibility determinations to be decided by the trial court, we affirm this point.

Reversed and remanded for retrial.

GRIFFEN and MARSHALL, JJ., agree.