Emmanuel Joseph LEE  *v*.  STATE of Arkansas

CA CR 07-429                                      279 S.W.3d 496

Court of Appeals of Arkansas
Opinion delivered March 12, 2008

24

*Constance Grayson*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

D.P. MARSHALL JR., Judge. A jury convicted Emmanuel Lee of fraudulently using a credit card belonging to Border Express, a company that had hired Lee to drive a truck. Lee attacks his conviction with three arguments. He challenges the sufficiency of the evidence. He argues that the circuit court should have suppressed certain evidence. And he contends that the circuit court violated the Confrontation Clause by allowing the investigating police officer to testify about what the deceased owner of Border Express told the officer on the night of Lee's arrest.

I.

To avoid any double-jeopardy issue, we take the sufficiency argument first. *Standridge v. State*, 357 Ark. 105, 112, 161 S.W.3d 815, 818 (2004). We consider the entire record (including the evidence that Lee challenges on appeal) in the light most favorable to the jury's verdict. *Cook v. State*, 77 Ark. App. 20, 31, 73 S.W.3d 1, 7 (2002). Lee fraudulently used the Border Express credit card if, with the purpose to defraud, he used the card without the company's authorization. Ark. Code Ann. § 5-37-207 (Repl. 2006).

Border Express hired Lee to drive a rented Penske truck loaded with wine racks from Fort Smith to Wisconsin and back. Border Express gave Lee a credit card to use for gasoline. Lee arrived back in Fort Smith late (due to mechanical problems), dropped off the rented truck, and went home. Then he and his neighbor, Robert Peterson, drove to a convenience store in Lee's pick-up truck. Lee told Peterson that he needed to fill up his truck, and a fifty-five gallon drum, with gasoline — because he needed to go get a Border Express truck that had run out of gas on the side of the road. Then Lee pumped $150.00 worth of gasoline and tried to pay with Border Express's credit card. When the card was declined, the clerk called the store owner, who then called the police.

Officer Mark McGraw came to the store. He questioned the clerk, Lee, and Peterson. According to McGraw, Lee told him what he had told Peterson: Lee had permission to use the card to buy gasoline for a stranded Border Express truck. At trial, Lee denied making this statement. Lee testified that he told Peterson and Officer McGraw that Border Express was paying him for the recent trip by letting him use the card to fill up his truck and buy a barrel-full of gasoline for his girlfriend to use while he was out of town. Officer McGraw also called Don Jordan, the owner of Border Express. Among other things, Jordan told the officer that he had deactivated the credit card and that Lee did not have permission to use the card. Officer McGraw then arrested Lee.

At trial, and over Lee's objection, Jordan's statements came in through Officer McGraw's testimony. Jordan's daughter, who had taken over Border Express after her father's death, testified that she had found no record of a personal-use arrangement with Lee involving the credit card. She said that the company's books showed that Lee later received a check for his work. She knew of no instance in which her father had paid a driver with gasoline through a company card.

▋ Having heard all this evidence, the jury was justified in finding Lee guilty. Jordan's testimony — through Officer McGraw — established that Lee used the card for himself without authorization. Jordan's daughter's testimony was evidence that Lee did not have permission to use the card. And Lee's inconsistent statements about why he was buying gasoline were circumstantial evidence of guilt. *Bennett v. State*, 297 Ark. 115, 119-22, 759 S.W.2d 799, 801-03 (1988). Contrary to Lee's contention, the fact that Peterson eventually paid for all the gasoline that night did not erase Lee's failed effort to use the company's card. The jury was entitled to convict based on the substantial evidence of Lee's guilt. *Cook, supra.*

## II.

Lee's suppression argument also fails. The State is correct that Lee's failure to follow Rule of Criminal Procedure 16.2(b) by filing a pretrial motion to suppress would have justified the circuit court's outright denial of his at-trial motion. *Holt v. State*, 15 Ark. App. 269, 271, 692 S.W.2d 265, 267 (1985). The circuit court, however, exercised its discretion, as the Rule allows, and decided Lee's motion on the merits. We will therefore consider the merits

too. Lee contends that Officer McGraw should have given him a *Miranda* warning before questioning him at the convenience store. McGraw having failed to do so, Lee continues, all his statements to McGraw at the store should have been suppressed.

Lee is mistaken. Rule of Criminal Procedure 3.1 allows police officers to detain persons for as long as fifteen minutes to investigate crimes. Lee made no showing that Officer McGraw detained him longer than this period while the officer asked questions about what happened. Lee was not in custody until McGraw arrested him and refused to let him drive his pick-up truck home. *State v. Spencer*, 319 Ark. 454, 457, 892 S.W.2d 484, 485-86 (1995). Having considered the totality of the circumstances on *de novo* review, we affirm the circuit court's denial of Lee's motion to suppress. *Summers v. State*, 90 Ark. App. 25, 31, 203 S.W.3d 638, 641 (2005).

III.

We hold, however, that Lee is entitled to a new trial. The circuit court's decision to allow Officer McGraw to testify repeatedly about everything that Jordan told him violated the Confrontation Clause of the Sixth Amendment to U.S. Constitution. Despite several objections from Lee at trial, the circuit court allowed Officer McGraw to give the following testimony on direct examination in response to the deputy prosecutor's questions.

Q. All right. So, when you talked with Mr. Jordan about this card that was in the defendant's possession, what did — what did you ask Mr. Jordan about this fuel card, and what did he tell you?

A. He said he had just spoken with Mr. Lee on the phone. Er, he said that Mr. Lee didn't have permission to use the vehi — er —

Q. He didn't have permission to use the card?

A. No, Sir. He didn't have permission to use it.

Q. Okay.

A. The, er, the card, he was very adamant that Mr. Lee had worked for him only one time, maybe, a week earlier, and was late in returning the vehicle, and he was very upset about that.

. . .

Q. So, Mr. Jordan was adamant that he was not allowed to use this card?

A. Yes, he was.

Q. When the vehicle, that he'd used that one time, that he was employed for Mr. Jordan, when the vehicle was returned, did Mr. Jordan tell you whether or not this defendant had given him the card back?

A. No, he — he did not receive the card or the manifest for the, er, loadings driving report.

Q. And did Mr. Jordan tell you why he, er, I guess, deactivated — for lack of a better term, deactivated that fuel card?

A. Er, he specifically said he feared that Lee would try to use that fuel card.

Q. He specifically said he feared that the defendant would try to use the fuel card?

A. Yes, Sir.

Q. And that's why he deactivated it?

A. Yes.

Then, after cross-examination, the prosecutor covered one area on redirect. He asked Officer McGraw: "[J]ust for the jury, again, er, what did Mr. Jordan say about his Wright Express fuel card and whether or not this defendant could use it." The last words that the jury heard from the police officer were Jordan's statements that Lee should have returned the card but he didn't, he (Jordan) feared Lee would try to use the card, and he canceled it.

The Confrontation Clause mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 42-69 (2004), the Supreme Court examined the history

behind the Clause and overruled its then-leading decision on point. The Court held that confrontation — the opportunity for cross-examination — is what the Constitution requires to test the reliability of testimonial statements offered at trial to prove the truth of the matter asserted. 541 U.S. at 63-69. Where testimonial evidence is offered, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." 541 U.S. at 68. Arkansas has recognized and applied *Crawford* several times. *E.g., Dednam v. State*, 360 Ark. 240, 200 S.W.3d 875 (2005).

Here, Jordan's death made him unavailable. So that aspect of the inquiry is easy. *Cf. Seaton v. State*, 101 Ark. App. 201, 205, 272 S.W.3d 854, 857 (2008). Were Jordan's statements testimonial? The circuit court ruled that they were not because Jordan was dead and he had made them during a police investigation where no one would expect an opportunity for cross-examination. This was error.

In *Davis v. Washington*, 547 U.S. 813 (2006), the Court answered a question left open in *Crawford*, and defined testimonial and nontestimonial statements.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.

Jordan's responses to Officer McGraw's questions were testimonial. There was no ongoing emergency at the convenience store. All the circumstances objectively indicated this fact and that the primary purpose of Officer McGraw's questioning of Jordan was to establish past events potentially relevant to prosecuting Lee. *Ibid.* Thus the very reason relied on by the circuit court for admitting this evidence over Lee's objection is the reason that the Confrontation Clause applies to it.

*Crawford* also recognized, however, that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S.

at 59 n.6 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). Our courts have noted and applied this exception. *E.g.*, *Brunson v. State*, 368 Ark. 313, 322, 245 S.W.3d 132, 140 (2006); *Dednam*, 360 Ark. at 246-49, 200 S.W.3d at 879-81; *Wooten v. State*, 93 Ark. App. 178, 181-83, 217 S.W.3d 124, 126-27 (2005).

As *Dednam* carefully articulates, the key is the purpose for which the State offers the out-of-court statement. 360 Ark. at 246-48, 200 S.W.3d at 879-81. The State argues, citing some of these precedents, that no confrontation problem exists in this case. According to the State, the "officer's testimony about Jordan's statements was to explain why he took the step of arresting [Lee], and was not presented for the truth of what Jordan had told either the officer or [Lee]."

We disagree. The record shows no such limited intention or effort by the State at trial. The argument made below by the State, and accepted by the circuit court, was that *Crawford* simply did not apply at all because this case involved a dead witness and no formal interrogation. Unlike in *Dednam*, for example, the prosecutor did not offer testimonial statements to show the reason for an action taken by police. *Dednam*, 360 Ark. at 246-47, 200 S.W.3d at 879-80. Unlike in *Street*, testimonial statements were not offered in rebuttal to the defendant's testimony to dispute his claim that his confession was the coerced and parroted version of a co-defendant's confession. *Street*, 471 U.S. at 413-14. Unlike in *Wooten*, Jordan's statements went to the core of the crime being tried, they were not offered on a side issue (a prior battery report) in the face of a video-taped confession to the alleged murder. *Wooten*, 93 Ark. App. at 181-83, 217 S.W.3d at 126-28. And unlike in *Brunson*, Jordan's testimony was not admitted for the limited purpose of corroborating other witnesses' testimony that an event had occurred (a protective order was issued during a volatile relationship). *Brunson*, 368 Ark. at 322, 245 S.W.3d at 140. In each of these precedents, the State sought to admit testimonial evidence for a limited, non-hearsay purpose on a marginal issue. Here, Jordan's testimony was about the core of the State's case on the crime charged.

■ The transcript demonstrates why the State offered this testimony from the first witness in its case in chief: for the truth of Don Jordan's statements that Lee used the card without authorization. The prosecutor hammered the key points on direct and redirect — Jordan was "adamant" that Lee did not have permission to use the card, and Jordan canceled the card because he

"feared" exactly what the State had to prove actually happened. The circuit court erred as a matter of law by holding that Jordan's death and the circumstances of his statements made Jordan's words to Officer McGraw nontestimonial.

The Confrontation Clause error, however, is not the end of our analysis. We must also consider the Jordan/McGraw testimony solely as an evidentiary matter. If the testimony given was admissible for any purpose, then we must affirm unless Lee sought and was denied a proper limiting instruction which would have cured any prejudice. Ark. R. Evid. 105; *Chisum v. State*, 273 Ark. 1, 6-9, 616 S.W.2d 728, 730-32 (1981). We thus come back to the State's contention that the Jordan/McGraw conversation was admissible to show the basis for action — the officer's arrest of Lee. *Dednam*, 360 Ark. at 246-48, 200 S.W.3d at 879-81. Lee did not request a limiting instruction. The circuit court offered to give one; Lee thanked the court for doing so, but maintained that any such instruction would be ineffective to remedy the lack of cross-examination.

Before Officer McGraw testified about Jordan's statements to him, the court told the jury that it could "put whatever reliability [ ] or credibility that you wish to make as far as the statements offered here, today, by this officer of someone who's deceased." Lee did not object to this defective instruction, did not abstract it, and does not seek reversal based on it. *Cf. Lamb v. State*, 372 Ark. 277, 285, 275 S.W.3d 144, 151 (2008) (failure to object to limiting instruction waives any alleged error about its efficacy). We therefore do not evaluate the limiting instruction in deciding this case. Instead, we quote it to show the contours of the alleged error that we do confront.

■ We hold that the Jordan/McGraw testimony *as given* was not admissible for any purpose. As Lee argued below, we agree that no limiting instruction would have tempered these repeated and strident words, untested by cross-examination, which the jury heard from Jordan through Officer McGraw about the central disputed issue in this case: Lee's authority to use the credit card. Of course Officer McGraw should have been allowed to testify that he had called Jordan that night. And we do not hold that, with a proper limiting instruction, the circuit court would have abused its discretion by allowing the policeman to take the next step and testify simply that Jordan did not confirm Lee's version of events. This is not the question presented. Unlike in *Dednam*, in this case

we face no such limited testimony. Instead, the Jordan/McGraw testimony as given presents one of those instances where, in light of issues being tried, these untested statements from a central but absent witness were so explosive that an admonition or other limiting instruction could never cabin their effect. *Cf. Green v. State*, 365 Ark. 478, 496, 231 S.W.3d 638, 652 (2006); *Grummer v. Cummings*, 336 Ark. 447, 450, 986 S.W.2d 91, 93 (1999).

■ Finally, the State suggests that any error here was harmless because the proof of Lee's guilt was overwhelming. We are not persuaded. Absent Jordan's testimony, the case against Lee is decidedly weaker. We cannot say with conviction that the Confrontation Clause error was harmless beyond a reasonable doubt. *Sparkman v. State*, 91 Ark. App. 138, 142, 208 S.W.3d 822, 825 (2005).

Reversed and remanded.

HART and BIRD, JJ., agree.